# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Michael S. JACOBS, Attorney at Law.†

Supreme Court

*No. 89-0863-D. Submitted on briefs March 27, 1991.—Decided April 18, 1991.*

(Also reported in 467 N.W.2d 783.)

† Motion for reconsideration denied. ABRAHAMSON, J. did not participate.

For the Board of Attorneys Professional Responsibility there were briefs by *Charles F. Kahn, Jr.* and *Kahn & Flynn, S.C.,* Milwaukee.

For the respondent there was a brief by *Brian E. Butler, Barbara A. Neider* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison.

PER CURIAM.   *Attorney disciplinary proceeding; attorney publicly reprimanded.*

This is an appeal by the Board of Attorneys Professional Responsibility (Board) from the referee's recommendation that this disciplinary proceeding be dismissed for the reason that the Board failed to establish by clear and convincing evidence that Attorney Michael Jacobs had engaged in professional misconduct. The Board also appealed from the referee's recommendation that the Board be required to pay Attorney Jacobs' costs in the proceeding.

We do not accept the recommendation to dismiss this proceeding for the reason that relevant findings of the referee concerning Attorney Jacobs' conduct are clearly erroneous and, consequently, his conclusion that Attorney Jacobs did not violate the Rules of Professional Conduct for Attorneys is not supported by the record. We conclude that Attorney Jacobs engaged in professional misconduct by entering into a business transaction with a client in which they had differing interests and in which the client expected him to exercise his professional judgment for her protection without first advising the client of their differing interests and obtaining the client's consent. He also engaged in dishonest conduct and misrepresentation in his handling of funds of a former client he undertook to invest at her request. Because of mitigating factors, we determine that a public reprimand is appropriate discipline to impose for that misconduct.

Before addressing the merits of the appeal, we first consider the Board's argument that the standard of review applicable to the referee's findings of fact—that they be accepted unless clearly erroneous, *Disciplinary Proceedings Against Swartwout,* 116 Wis. 2d 380, 342 N.W.2d 406 (1984)—should not apply in this proceeding because the referee did not observe the witnesses testifying but merely read the transcripts of their testimony.

This proceeding was assigned to the Honorable William C. Sachtjen, reserve judge, as referee but, following three days of hearing, Judge Sachtjen died and the matter was then assigned to the Honorable Timothy Vocke, reserve judge. Judge Vocke did not hold another hearing but reviewed the record and read the transcripts of the hearing held by Judge Sachtjen. As a result, the Board argued, the referee did not observe the demeanor of the witnesses and was in no better position than this court is to make subtle judgments regarding their credibility. The Board asked the court to review the record *de novo* and make findings of fact independently rather than apply the "clearly erroneous" standard to the referee's findings.

The fact that the referee did not see and hear the testimony of the witnesses at the disciplinary hearing is not reason to dispense with the referee's findings of fact and conduct a *de novo* review of the record. To the extent those findings rest on the referee's assessment of the credibility of witnesses offering contradictory testimony, we reject those findings when we assess the credibility of witnesses otherwise. In this regard, the referee had initially presumed that, when the testimony was contradictory, Attorney Jacobs was to be believed.[1] That presumption was unwarranted; the assessment of witness credibility is not in any way related to the burden of proof a party bears in litigation. Consequently, we reject as clearly erroneous the findings of the referee based on Attorney Jacobs' testimony in those instances when our

---

[1] At the outset in his report, the referee said, "The Board has the burden of proving these charges [of professional misconduct] by clear and convincing evidence . . . .. If any questions arose as to the credibility of witnesses, those questions were resolved in favor of Jacobs."

assessment of the credibility of witnesses differs from the referee's.

Attorney Jacobs was admitted to practice law in Wisconsin in 1974 and practiced in Madison from 1979 through 1983. Since then, other than for a four-month period in 1986, he has not practiced law in this state. He currently teaches law at De Paul University in Illinois. He has not previously been the subject of an attorney disciplinary proceeding.

In its complaint, the Board charged that Attorney Jacobs failed to disclose a potential conflict of interest to a client who was investing in a limited partnership he was organizing and of which he was general partner and, with respect to subsequent investments on behalf of this person, engaged in dishonesty, fraud, deceit or misrepresentation in his handling of her funds and failed to provide her an accounting she requested. Further, the Board alleged, Attorney Jacobs mishandled funds a friend had asked him to invest and engaged in dishonesty, fraud, deceit or misrepresentation in his communications with that friend regarding his handling of those funds. The complaint also charged that Attorney Jacobs misrepresented a fact to the district professional committee investigator but the Board voluntarily dismissed that count of the complaint prior to the hearing.

The referee found that when the limited partnership investment was made, there was no attorney-client relationship between Attorney Jacobs and the woman, nor was there such a relationship when the woman subsequently gave Attorney Jacobs money to invest on her behalf. Further, he concluded, by giving the woman a copy of the limited partnership agreement after she invested in it, Attorney Jacobs adequately disclosed any potential conflict between his interests as a general partner and her interests as a limited partner. Finally, the

referee concluded that Attorney Jacobs did not convert the woman's investment funds nor had any intent or purpose to deceive her with respect to his handling of them. Regarding the friend's investments, it was undisputed that there never had been an attorney-client relationship between the two and the referee found that Attorney Jacobs had no intention of misleading his friend when he gave him incorrect information concerning some of the investments and that he did not convert the friend's money.

This proceeding concerns Attorney Jacobs' conduct in the following matters. In the summer of 1979, a woman named Donnellan went to Madison and made an offer to purchase a house. After returning to her home in California, she telephoned Attorney Jacobs, who had been recommended to her by a couple she knew in Madison, and retained him to close the deal. Ms. Donnellan testified that during a telephone conversation in July, 1979, she told Attorney Jacobs she would be receiving a considerable amount of money from the sale of her California home and he asked if she were interested in investing in a limited real estate partnership he was putting together. She said she was but, as she had not yet closed on her home, she did not have the $10,000 required to purchase an 8.5% limited partnership interest. When Attorney Jacobs offered to advance her that amount and include her in the partnership, Ms. Donnellan accepted.

Subsequently, on September 24, 1979, she sent Attorney Jacobs a check in the amount of $10,280, of which $200 was payment of his legal fee for the Madison home purchase, $10,000 was repayment of the advance he had made to her and $80 was interest on that advance. Attorney Jacobs then sent Ms. Donnellan a copy of the limited partnership agreement, two provi-

sions of which indicated the potential for conflicts of interest between the limited and general partners. Thereafter, Ms. Donnellan was required to put another $1,600 into the partnership; ultimately, she lost her entire $11,600 investment when the partnership failed.

Contrary to Ms. Donnellan's testimony, Attorney Jacobs testified that after the Madison home purchase was closed, Ms. Donnellan asked him if he would invest for her the money she realized from the sale of her California home, as he was investing funds for the couple she knew in Madison. Attorney Jacobs said he agreed to do so and discussed with her the limited partnership opportunity.

On this point, the referee found that Ms. Donnellan learned of the limited partnership from her Madison friends, who were investing in it, and asked Attorney Jacobs to let her participate. He specifically found that Attorney Jacobs did not solicit Ms. Donnellan's investment in it. The referee considered that Ms. Donnellan's participation occurred when she paid Attorney Jacobs the $10,000 on September 24, 1979, approximately two months after the closing of the purchase on her home and, consequently, after their attorney-client relationship ended.

In addition to the partnership investment, Ms. Donnellan sent Attorney Jacobs $50,000 in September, 1979, asking him to invest it in money-market type investments that would be safe, specifying that she did not want to invest in any stocks or risky ventures, which Attorney Jacobs pledged not to do. Attorney Jacobs opened a securities account at a stock brokerage firm entitled "Michael S. Jacobs, Trustee, for Donnellan," deposited the $50,000 and invested it in money market securities. On January 7, 1981, without notice to or authorization from Ms. Donnellan, he removed $40,000

from that account and placed it in his personal margin account at the same brokerage. Ms. Donnellan subsequently gave Attorney Jacobs additional funds to be invested, totaling $11,000, all of which Attorney Jacobs placed directly into his own account.

At the disciplinary hearing, Attorney Jacobs claimed that, acting as trustee of Ms. Donnellan's funds, he loaned $40,000 to himself. He testified that he prepared a promissory note evidencing the loan, to which he wrote addenda as he "borrowed" the additional investment funds Ms. Donnellan sent him. However, he never told Ms. Donnellan of that "loan" nor did he send her a copy of the promissory note. Indeed, he never told anyone of the note and was unable to produce it in this proceeding. He testified that he believed it to have been in one of the files taken from his automobile when it was vandalized.

On January 14, 1981, Attorney Jacobs sent Ms. Donnellan a letter regarding the investments he had made on her behalf and enclosed an account statement from the brokerage firm dated December 31, 1980 showing an ending balance in the trust account of $44,725.47. However, when he sent that account statement, he had already withdrawn the $40,000 the week before and the actual balance in the account was less than $5,000.

In 1982 Attorney Jacobs reported to Ms. Donnellan's accountant that she had earned $6,000 in interest; in 1983, the amount he reported to the accountant was $4,600. At both those times, Attorney Jacobs knew he had withdrawn $40,000 from Ms. Donnellan's account at the beginning of January, 1981, but he testified that the amounts he reported as interest reflected the interest he was "paying" on the "loan." However, Attorney Jacobs never paid interest into Ms. Donnellan's account during those years.

At some time in 1982, Ms. Donnellan learned from the broker that $40,000 had been removed from her trust account but she did not know Attorney Jacobs had "borrowed" it and was using it for his own investments. When she asked him about it, Attorney Jacobs told her he had invested it in "an interest bearing note" but did not tell her he was the borrower. Ms. Donnellan allowed Attorney Jacobs to continue handling her money and from time to time asked him for information about it, which Attorney Jacobs provided.

Ms. Donnellan testified that when she learned Attorney Jacobs was going to take an extended vacation in 1983, she asked him to return all of her money. Attorney Jacobs testified to the contrary that she specifically asked him for $40,000, which he gave to her. Believing Attorney Jacobs, the referee found that Ms. Donnellan had asked for only $40,000, not all of her funds in Attorney Jacobs' possession. The referee considered that consistent with the fact that on two prior occasions Ms. Donnellan had asked for and received from him specific sums of her money. After he gave her $40,000, Attorney Jacobs still had over $17,000 of her funds.

In May, 1984, Attorney Jacobs wrote to Ms. Donnellan that she had earned $2,667 in interest during the prior year and said he believed he had less than $1,000 of her funds. That was only an estimate, he later testified, for the reason that his files regarding Ms. Donnellan's investment had been lost or stolen. That estimate turned out to be low, as Attorney Jacobs and Ms. Donnellan later settled on $28,000, which he paid her in November, 1986, after she had asked him for everything he owed her. Thus, Ms. Donnellan ultimately received all of the money she had given Attorney Jacobs to invest, plus interest.

In addition to the real estate closing, Attorney Jacobs drafted Ms. Donnellan's will in December, 1979 and set up a corporation for her in March, 1982. He billed her for each of those but he did not bill her either for opening the trust account or for investing her funds. The referee found that Ms. Donnellan did not seek advice or assistance pertaining to matters within Attorney Jacobs' professional competence as an attorney in asking him to invest her money and none of her funds were deposited in an attorney's client trust account. The referee also found that Ms. Donnellan did not hire Attorney Jacobs as her lawyer with regard to the limited partnership and paid him no legal fees in connection with that investment. Thus, the referee found, there was no attorney-client relationship regarding either the limited partnership or the other investments and that Ms. Donnellan, with her education, intelligence and experience with attorneys, knew or should have known that there was no such relationship. Even if there had been a professional relationship at the time Ms. Donnellan invested in the partnership, the referee concluded that, by giving her a copy of the limited partnership agreement, Attorney Jacobs adequately disclosed any potential conflict between his interest and hers in the deal.

Regarding the investment of her funds, based on Attorney Jacobs' testimony, the referee found that Attorney Jacobs kept a file regarding the money he was investing on behalf of Ms. Donnellan and that it contained the amount of money he had received, copies of reports from the brokerage firm, the promissory note and addenda to it and checks that he had sent to Ms. Donnellan. The referee further found that Attorney Jacobs did not take Ms. Donnellan's money for his own use but borrowed it and was at all times obligated to repay the loan. The referee then concluded that Attorney

Jacobs neither converted those funds nor had any intent or purpose to deceive Ms. Donnellan with respect to his handling of them.

In addition to his dealings with Ms. Donnellan, the Board had charged that Attorney Jacobs engaged in dishonesty, fraud, deceit or misrepresentation in his handling of funds he was investing for a close friend, an attorney in Chicago. From November, 1980 through August, 1981, the friend, Attorney Levin, sent Attorney Jacobs a total of $50,000 for investment, $29,000 of his personal funds and the rest from his pension and profit sharing plan. It was undisputed that no attorney-client relationship existed between Attorney Levin and Attorney Jacobs, and Attorney Levin did not pay Attorney Jacobs for investing his funds.

As the funds he gave Attorney Jacobs for investment were divided between his personal funds and his pension or retirement funds, Attorney Levin considered it important to differentiate between the two for tax purposes. Attorney Levin testified that Attorney Jacobs had promised to keep the funds in separate accounts; Attorney Jacobs testified that he specifically told Attorney Levin he would not do that but that he would keep separate accounting. Noting that at the hearing Attorney Levin himself spoke of separate "records" of his funds, rather than separate "accounts," the referee found that Attorney Jacobs kept separate records of the transactions he made on Attorney Levin's behalf.

Attorney Levin agreed to have Attorney Jacobs invest his money basically the same way he was investing his own. Attorney Jacobs did not open any money market or security accounts in Attorney Levin's name; he transferred all of those funds to his personal margin account at the brokerage firm and used that account to purchase stock, some of which he eventually told Attor-

ney Levin was purchased on his behalf. In 1981 and 1982, Attorney Jacobs sold at a loss stock he said he had purchased on behalf of Attorney Levin but he initially reported that loss on his own income tax returns. However, those losses were claimed in error and, in any event, had no effect on his tax liability for those years.

Attorney Jacobs kept Attorney Levin informed of his investments and in 1983 told him the stock he had purchased had lost two-thirds of its value. He told Attorney Levin he had all of his own money in the same stock and that his broker advised him to hold on to it in the expectation that its value would increase. When Attorney Jacobs told Attorney Levin he was going to follow that advice and asked him what he wanted him to do with his shares, Attorney Levin told him to hold onto them. As of 1988, the total value of Attorney Levin's stock was less than $500.

At some point during their dealings, Attorney Jacobs was limited in his attempt to respond to Attorney Levin's requests for information because he could not locate his files relating to those investments. Those files were believed to have been among those that had been taken from Attorney Jacobs' car. He testified that the lack of those files resulted in three errors in his May 29, 1984 letter to Attorney Levin concerning the number of shares he had sold, the year in which he purchased some of the stock and the number of shares of another corporation he was holding. The referee specifically found that Attorney Jacobs had no intention of misleading Attorney Levin when he wrote that letter.

On the basis of the foregoing, the referee made the following conclusions concerning the Donnellan and Levin matters. Attorney Jacobs did not violate SCR 20.27, prohibiting a lawyer from entering into a business transaction with a client if they have differing interests

and if the client expects the lawyer to exercise independent professional judgment for the protection of the client without full disclosure and client consent. The referee found that Ms. Donnellan was not Attorney Jacobs' client when she entered into those transactions; their attorney-client relationship ended upon the closing of the home purchase. Even if there were an attorney-client relationship, the referee concluded, Attorney Jacobs informed Ms. Donnellan of any differing interests in the limited partnership by sending her a copy of the agreement.

The referee also concluded that Attorney Jacobs did not violate SCR 20.50(2)(c), requiring an attorney to maintain complete records of all funds and other property of a client coming into the lawyer's possession and render appropriate accounts and pay the client all funds upon request. The referee found that each time Ms. Donnellan asked for a specific amount of money, Attorney Jacobs gave it to her, including what she testified was her request for all of her money, in response to which Attorney Jacobs gave her only $40,000. Further, the referee concluded that the rules relating to the safekeeping of client property concern lawyers and clients and has no application to the Donnellan matter. Finally, the referee concluded that Attorney Jacobs did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, proscribed by SCR 20.04(4),[2] because he had no purpose to deceive either Ms. Donnellan or Attorney Levin.

In its appeal, the Board asserted that the referee's finding that there was no attorney-client relationship when Ms. Donnellan invested in Attorney Jacobs' lim-

---

[2]SCR 20.04 provides: "**Misconduct.** A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

404

ited partnership was clearly erroneous. We agree. The referee based that finding on his finding that Ms. Donnellan did not actually invest in the partnership until she paid Attorney Jacobs the $10,000 for her investment share after he had closed the real estate transaction in which he was representing her and, consequently, after the attorney-client relationship ended. The latter finding ignores the uncontroverted fact[3] that, while the real estate transaction was pending, Ms. Donnellan agreed to invest in the limited partnership and became indebted to Attorney Jacobs in the amount of $10,000 for her participatory share.

Having found that an attorney-client relationship existed when Ms. Donnellan invested in the limited partnership, we reject the referee's conclusion that Attorney Jacobs was under no professional obligation to disclose any potential conflict of interest between his and Ms. Donnellan's interests in the limited partnership. We also reject his conclusion that, even if the attorney-client relationship existed when Ms. Donnellan invested in the partnership, Attorney Jacobs satisfied his professional obligation to disclose the potential conflict by sending her a copy of the limited partnership agreement.

Supreme Court Rule 20.27(1), prohibits a lawyer from entering into a business transaction with a client "if they have differing interests in that transaction and if the client expects the lawyer to exercise his or her professional judgment in the transaction for the protection of the client, unless the client has consented after full disclosure." Attorney Jacobs did not provide Ms. Donnellan a copy of the partnership agreement until after she had made the investment. Moreover, whether

---

[3]The referee found that Ms. Donnellan subsequently paid Attorney Jacobs $10,000, plus interest, on a "personal loan" but made no finding with respect to the purpose of that loan.

or not the agreement itself "completely spelled out" his and Ms. Donnellan's differing interests, as the referee found, the "full disclosure" contemplated by the rule requires an attorney to do more than merely provide a client a copy of a legal document in which their respective interests in a business transaction may be set forth but the differing nature of them may not be readily apparent, especially to a nonlawyer. Consequently, we conclude, Attorney Jacobs violated SCR 20.27 by failing to fully disclose the differing interests in the limited partnership in which his client was investing prior to obtaining her consent to make that investment.

The Board also argued that another finding of the referee is clearly erroneous: that when Ms. Donnellan learned that Attorney Jacobs had lent $40,000 of her funds to himself, she expressed no desire to have her funds returned to her. The Board correctly asserted that there is nothing in the record to support the finding that Ms. Donnellan learned that Attorney Jacobs had "borrowed" her funds when she was told that he had taken $40,000 of her funds out of the brokerage trust account. The record establishes that in the spring of 1982 Ms. Donnellan learned from Attorney Jacobs' stockbroker that $40,000 of her money had been removed from the account but Attorney Jacobs testified that he never told her what he had done with that money but merely said to her that the funds had been invested in an "interest-bearing note" at money market rates. Ms. Donnellan did not learn that Attorney Jacobs had put her money into his own account and used it to purchase stock for himself until more than five years later, after she had retained an attorney and filed a grievance with the Board.

The referee's finding that Ms. Donnellan did not ask to have the $40,000 returned to her appears to sup-

port his finding that Attorney Jacobs had her implicit consent to "borrow" the money and use it for his own investments. That finding, in turn, supports the referee's conclusions that Attorney Jacobs did not convert Ms. Donnellan's funds and did not intend to deceive her regarding his handling of them.

We reject those conclusions as clearly erroneous. Attorney Jacobs sent Ms. Donnellan a copy of the account statement current to a date one week prior to his removal of $40,000 of her funds showing a balance $40,000 higher than Attorney Jacobs knew it was when he sent it to her. Moreover, when Ms. Donnellan subsequently asked him what had happened to those funds, Attorney Jacobs told her they had been invested in an interest-bearing note but omitted the fact that he used those funds himself for his own investments. Regarding Attorney Jacobs' claim that he had implicit authority to borrow Ms. Donnellan's funds, while he testified that he prepared a promissory note as evidence of the $40,000 "loan" and wrote addenda to it as he "borrowed" additional sums Ms. Donnellan sent him for investment, Attorney Jacobs never sent the note or even a copy of it to Ms. Donnellan, whose funds he claimed to have borrowed. Moreover, he never told her or anyone else of the note.

By "borrowing" those funds, Attorney Jacobs moved the majority of Ms. Donnellan's investment from relatively secure money-market investments to a personal, unsecured promise to pay. His testimony that the promissory note he prepared was "secure" because at the time he had a significant personal net worth and his family had money is unconvincing. Moreover, Ms. Donnellan could not have proved Attorney Jacobs' indebtedness if she had been required to do so, as she neither had his note nor knew he had taken her funds for himself.

We conclude that Attorney Jacobs was dishonest in his handling of Ms. Donnellan's funds. He used those funds for his own personal benefit, at the risk of her investment and contrary to her instructions, and sought to profit for himself from the use of her money beyond the return it was already earning for her in the money-market instruments. In addition, he misrepresented to her what he had done with those funds. Thus, Attorney Jacobs engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of former SCR 20.04(4). The fact that such conduct occurred outside of an attorney-client relationship does not prevent it from constituting misconduct under SCR 20:8.4(c),[4] nor did Attorney Jacobs argue that it does.

Regarding Attorney Jacobs' handling of Attorney Levin's funds, we adopt the referee's findings of fact, as they are not clearly erroneous. We also adopt the referee's conclusions based on those findings: Attorney Jacobs did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation in his handling of those funds or in his communications to Attorney Levin regarding them; he did not violate former SCR 20.50[5] by

---

[4]SCR 20:8.4 provides: "**Misconduct** It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[5]SCR 20.50 provides:

**Preserving identity of funds and property of a client.** (1) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm may be deposited in such an account except as follows:

(a) Funds reasonably sufficient to pay bank charges may be deposited in the account.

(b) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited into the account, but the portion belonging to the lawyer or law firm may be

failing to maintain records of either Ms. Donnellan's or Attorney Levin's funds or by failing to periodically give them accountings of them. The referee properly rejected the Board's contention that a lawyer acting as a fiduciary outside a professional relationship is required to comply with the Rules of Professional Conduct for Attorneys applicable to an attorney's handling of client funds.

■

Before addressing the issue of discipline to be imposed, we dispose of several pending notions. First, in its reply brief, the Board of Attorneys Professional Responsibility asked the court to strike Attorney Jacobs' brief because it set forth arguments based on facts not elicited at the disciplinary hearing but set forth in affidavits of Attorney Jacobs and his counsel filed in this proceeding. We deny that motion. The affidavits had been submitted in support of Attorney Jacobs' motion to dismiss, which the referee denied, and we have accorded appropriate weight to Attorney Jacobs' arguments based on matters set forth in them.

withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion may not be withdrawn until the dispute is finally resolved.

(2) A lawyer shall:

(a) Promptly notify a client of the receipt of the client's funds, securities or other properties.

(b) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(c) Maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

(d) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

Second, after the referee submitted his report and recommendation and the Board filed a notice of appeal, Attorney Jacobs filed a motion seeking costs and attorney fees, asserting that the Board's complaint constituted a frivolous action under sec. 814.025, Stats. Attorney Jacobs contended that three of the six allegations of professional misconduct set forth in the Board's complaint were frivolous. One of those charges was dismissed by the Board prior to the disciplinary hearing and the other two alleged a conflict of interest between Attorney Jacobs and Ms. Donnellan in the limited partnership and his failure to render an accounting to Ms. Donnellan concerning his handling of her funds. Attorney Jacobs did not contend that the remaining charges of dishonesty, deceit and fraud in his handling of Ms. Donnellan's and Attorney Levin's funds were frivolous.

In response, the Board argued that the motion was untimely, as it was never properly raised before the referee but is here for the first time in the appeal. The Board further asserted that sec. 814.025, Stats., does not apply to attorney disciplinary proceedings, as the Supreme Court Rules specifically address the assessment of costs in SCR 22.20[6] and make no provision for the award of

---

[6]SCR 22.20 provides:

**Assessment of costs.** (1) The supreme court may assess all or part of the costs of the proceeding against the respondent and enter a judgment for costs. The board may assess all or part of the costs of a proceeding in which the board imposes discipline pursuant to SCR 21.09(2). Costs are payable to the board.

(2) In seeking the assessment of costs by the supreme court, the board shall file a statement of costs within 14 days of the filing of the referee's report with the court, provided that, in the event an appeal of the referee's report is filed or the supreme court orders briefs to be filed in response to the referee's report, the statement of costs shall be filed within 14 days of the date on which the appeal is assigned for submission to the court or the briefs ordered by the

costs and attorney fees to a respondent attorney.

The motion for costs and attorney fees based on sec. 814.025, Stats., is denied. Assuming, *arguendo,* that sec. 814.025, Stats., applies in attorney disciplinary proceedings, Attorney Jacobs does not allege that the Board's complaint was frivolous but only that a portion of it was. Further, the Board voluntarily dismissed one of the claims Attorney Jacobs alleged to have been frivolous and the other two claims rested on factual determinations, one of which we have made contrary to Attorney Jacobs' position.

Third, we reject Attorney Jacobs' motion to strike the Board's statement of costs on the ground that the assessment of costs is discretionary and, because the referee recommended dismissal of the complaint and the Board appealed, if the court determines that Attorney Jacobs did engage in professional misconduct and rejects the referee's recommendation, "it should acknowledge that the case was a close one by not requiring Respondent to pay the costs of the proceeding." That objection is meritless.

We now address the issue of discipline. In determining the discipline to impose for Attorney Jacobs' misconduct, we consider in mitigation of its seriousness the fact that Ms. Donnellan was not harmed by Attorney Jacobs' use of her funds for his own profit without her knowledge or consent. Although her investment was at risk,

court are filed. Objection to the statement of costs shall be filed by motion within 7 days of service of the statement of costs.

(3) Upon the assessment of costs by the supreme court, the clerk shall issue a judgment for costs and furnish a transcript of the judgment to the board. The transcript may be filed and docketed in the office of the clerk of court in any county and shall have the same force and effect as judgments docketed pursuant to ss. 809.25 and 806.16 of the statutes.

411

she received the return of her full investment, together with interest. In addition, Ms. Donnellan paid Attorney Jacobs no fee for his investment services. We also note that Attorney Jacobs testified and stated in an affidavit that he will not practice law in Wisconsin again. Consequently, a suspension of his license to practice law is unnecessary, either as an appropriate response to the seriousness of his misconduct or to protect the Wisconsin public and its legal system from his further misconduct.

██ We determine that Attorney Jacobs' misconduct warrants a public reprimand. In his brief, Attorney Jacobs stated that, if the court concludes that discipline should be imposed, it should be no more than a private reprimand, which he asserted would serve the goals of attorney discipline while taking into account the mitigating factors. We disagree. The purpose of lawyer discipline includes deterring other attorneys from engaging in similar misconduct and that deterrence requires that the discipline be public. Further, the severity of discipline imposed should be proportionate to the seriousness of the attorney's misconduct. Under the circumstances before us, a public reprimand is appropriate.

IT IS ORDERED that Attorney Michael S. Jacobs is publicly reprimanded for professional misconduct.

IT IS FURTHER ORDERED that within 60 days of the date of this order Michael S. Jacobs pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Michael S. Jacobs to practice law in Wisconsin shall be suspended until further order of the court.

ABRAHAMSON, J., did not participate.

LOUIS J. CECI, J. (dissenting). I disagree with the discipline imposed by the majority. For the misconduct involved here, I would impose a six-month suspension of Mr. Jacobs' license to practice law in Wisconsin. Accordingly, I dissent.